**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOHN ROGERS, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:16-CV-1299 (JCH) |
| | : | |
| v. | : | |
| | : | |
| SCOTT SALIUS, et al., | : | AUGUST 17, 2016 |
| Defendants. | : | |
| | : | |
| | : | |

**INITIAL REVIEW ORDER**

The plaintiff, John Rogers ("Rogers"), currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, has filed a Complaint pro se under section 1983 of title 42 of the United States Code.  See Complaint ("Compl.") (Doc. No. 1) ¶¶ 1, 3.  The Complaint was filed on August 1, 2016, and his motion to proceed in forma pauperis was granted on August 3, 2016.  The named defendants are Captain Scott Salius ("Salius"), Lieutenant Kitt ("Kitt"), Officer Grasso ("Grasso"), Nurse Barbara LaFrance ("LaFrance"), Counselor Angela Maioruna ("Maioruna"), Lieutenant Johnson ("Johnson"), Officer Shepard ("Shepard"), Counselor Damian Doran ("Doran"), Dr. Syhed Johar Naqvi ("Dr. Naqvi"), Director of Security Kimberly Weir ("Weir"), Deputy Warden Jesus Guadarrama ("Guadarrama"), and John Does 1–3.  Rogers sues all defendants in their individual and official capacities.  See id. ¶ 18.  Rogers alleges that the defendants failed to protect him from harm and were deliberately indifferent to his safety and serious medical needs.  See id. ¶¶ 43–45.  Rogers seeks injunctive and declaratory relief, and damages.  See id. ¶¶ 46–49.

Under section 1915A of title 28 of the United States Code, the court must review

prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A.  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  See Bell Atlantic v. Twombly, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants).

## I.    ALLEGATIONS

Rogers was a member of the security risk group, the Crips.  See Compl. ¶¶ 19, 21.  In 2012, he renounced his affiliation and remained inactive throughout the time relevant to his claim.  See id. ¶ 19.  He continues to be housed in the Security Risk Group ("SRG") unit at MacDougall-Walker Correctional Institution ("MacDougall").  See id. ¶¶ 3, 19.  Inmates in the SRG unit attend recreation with their hands cuffed behind their backs and attend recreation only with inmates affiliated with the same group.  See id. ¶ 19.  Beginning in 2010 and continuing until 2013, Rogers informed defendant Weir

2

multiple times that he was concerned for his safety.  See id. ¶¶ 20–21.  His requests for transfer to protective custody were denied.  See id. ¶¶ 20–21.

In 2013, Rogers was re-affiliated as an SRG Crip.  See id. ¶ 21.  He again requested confinement in protective custody.  See id. ¶ 21.  Defendant Weir denied the request and sent Rogers to the SRG program at MacDougall.  See id. ¶ 21.  In September 2013, other Crip members told Rogers to assault another inmate.  See id. ¶ 22.  Rogers refused, claiming his inactive status.  See id. ¶ 22.  As a result of his refusal, a "hit" was placed on Rogers.  See id. ¶ 22.  Defendant Shepard intercepted a note about the hit between two Crip inmates and forwarded it to defendants Salius, Doran and Guadarrama.  See id. ¶ 23.  They did nothing to prevent the assault.  See id. ¶ 23.

Defendant Doran told Rogers that he had found "this month[']s hit list," but the information meant nothing to Rogers.  See id. ¶ 24.  On October 31, 2013, defendants Grasso and John Does 1–3 were in charge of Crip recreation.  See id. ¶ 25.  They took the Crip inmates outside and applied handcuffs to all inmates.  See id. ¶ 25.  Rogers believes that on multiple occasions, while defendant Grasso was assigned to recreation in the SRG unit, inmates slipped out of their handcuffs and used them as weapons to assault other inmates.  See id. ¶ 26.

On October 31, 2013, one inmate slipped his handcuffs and used them to assault Rogers while another inmate kicked and stomped Rogers in the head, neck and face.  See id. ¶ 27.  Right before the assault, Rogers claims that defendant Grasso saw the inmate slip his handcuffs and told him to "make it quick" and to "get on the ground when

I call the code." See id. ¶ 28. Rogers was unable to protect himself and suffered multiple injuries. See id. ¶ 29.

Following the assault, Rogers was seen in the medical unit where he received stitches. See id. ¶ 30. Although he complained of dizziness and pain in his neck and head, these claims were not addressed. See id. ¶ 30. When Rogers was returned to his cell, defendant Grasso approached him and tried to explain that he did not set Rogers up for the assault. See id. ¶ 31. He asked Rogers not to sue him. See id. ¶ 31. Defendants Salius and Doran told Rogers about finding the note and learning about the hit. See id. ¶ 32.

A few days later, Rogers felt a pop or crack at the base of his neck and his left arm became numb. See id. ¶ 33. He was seen by Dr. Naqvi who prescribed Flexeril, a muscle relaxant, for a few days. See id. ¶ 33. Dr. Naqvi said it was not serious and opined that Rogers had just slept wrong. See id. ¶ 33. Rogers disagreed with this diagnosis. See id. ¶ 33. Following this incident, the medical unit ignored Rogers' complaints. See id. ¶ 34. Nurse LaFrance told him that he would be fine and that the numbness and neck pain would go away with time. See id. ¶ 34. When Rogers explained about the incident in the recreation yard, she said he was overreacting. See id. ¶ 34.

On February 20, 2014, Rogers lay down on the cell floor to "manipulate a medical code" to obtain medical assistance. See id. ¶ 35. He was sent to St. Francis Hospital for a CAT scan and MRI. See id. ¶ 35. The tests showed that Rogers had suffered trauma to the neck, specifically disc bulges at C4 and C5 and a fracture at T1.

See id. ¶ 36.  Rogers remained overnight because he needed surgery to have a screw

inserted into his neck.  See id. ¶ 37.  He was discharged the following day without the

surgery because the Department of Correction's contract for medical services was with

the University of Connecticut Health Center, not St. Francis Hospital.  See id. ¶ 38.

Rogers' medical needs were ignored until June 24, 2014, when he was sent to

the University of Connecticut Health Center for a CAT scan and MRI.  See id. ¶ 39.

Nothing was done to address the injuries.  See id. ¶ 39.  Rogers discharged from

custody on July 3, 2014, without his medical needs being addressed.  See id. ¶ 40.

II.   **ANALYSIS**

Rogers includes three claims in his complaint:  (1) defendants Salius, Maioruna,

Doran, Guadarrama, Shepard, Weir, Johnson and Kitt were deliberately indifferent to

his safety; (2) defendants LaFrance and Dr. Naqvi were deliberately indifferent to his

serious medical needs; and (3) defendants Salius, Maioruna, Doran, Shepard,

Guadarrama, Weir, Johnson, Kitt, Grasso and Does 1–3 failed to protect him from harm.

See id. ¶¶ 43–45.

A.      Claims for Damages

The court notes that Rogers fails to indicate in which capacity he seeks damages

from the defendants.  See id. ¶¶ 48–49.  The Eleventh Amendment divests the district

court of subject matter jurisdiction over any claims for monetary damages against a

state official acting in his official capacity unless the state has waived this immunity or

Congress has abrogated it.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).

Section 1983 does not abrogate Eleventh Amendment immunity.  See Quern v. Jordan,

440 U.S. 332, 343 (1979).   As Rogers has not provided any evidence suggesting that the State has waived immunity, any possible claims for damages against the defendants in their official capacities are dismissed.  Claims for damages against the defendants in their individual capacities, however, remain.

      B.                  Defendants Kitt, Johnson and Maioruna

Although named as defendants, Rogers includes no factual allegations against Lieutenants Kitt and Johnson and Counselor Maioruna.  See Compl. ¶¶ 19–40.  In his description of the parties, he states only that Kitt and Johnson were custody supervisors, responsible for the overall safety of inmates.  See id. ¶¶ 5, 9.

To obtain an award of damages against any defendant, Rogers must show that the defendant was personally involved in the alleged constitutional deprivation.  See Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010).  Rogers alleges no facts suggesting that defendant Maioruna was aware of the threat against him or responsible in any way for the handcuffing of inmates during recreation or inmate medical treatment.  He merely includes her name in his failure to protect and deliberate indifference to safety claims.  See Compl. ¶¶. 43, 45.  The court can discern no factual basis for a claim for damages against defendant Maioruna.  The court similarly can discern no basis for a claim for declaratory judgment regarding her acts or omissions.  See id. ¶ 46.  Rogers also seeks injunctive relief in the form of an order that inmates not be handcuffed with hands behind their backs during recreation.  See id. ¶ 47.  This relief would involve a policy change that must be effected by high-ranking correctional officials.  Defendant

Maioruna is a counselor, not an official that could effect such a change.  See id. ¶ 8.
Accordingly, the claims against defendant Maioruna are dismissed.

As lieutenants, defendants Kitt and Johnson are supervisors.  Rogers can
demonstrate the personal involvement of supervisory officials by plausibly alleging that
(1) the defendants actually and directly participated in the alleged actions; (2) the
defendants failed to remedy a wrong after being informed of the wrong through a report
or appeal; (3) the defendants created or approved a policy or custom that sanctioned
objectionable conduct which rose to the level of a constitutional violation or permitted
such a policy or custom to continue; (4) the defendants were grossly negligent in their
supervision of the officers who committed the constitutional violation; or (5) the
defendants were deliberately indifferent to the plaintiff's rights by failing to act in
response to information that unconstitutional acts were occurring.  See Hernandez v.
Keane, 341 F.3d 137, 144 (2d Cir. 2003).  Rogers must also plausibly allege a causal
link between the actions of the supervisory official and his injuries.  See Poe v. Leonard,
282 F.3d 123, 140 (2d Cir. 2002).

Rogers alleges no facts about defendants Kitt or Johnson, he merely includes
them in his failure to protect and deliberate indifference to safety claims. See Compl. ¶¶
43, 45.  He does not allege that they directly participated in the incident or were
informed about it and failed to take action.  Further, Rogers alleges that the incident
occurred because the inmate who assaulted Rogers was able to slip his handcuffs to
the front.  See id. ¶ 27.  Although he alleges that this had happened before while
defendant Grasso was supervising recreation, see id. ¶ 26, Rogers alleges no facts

7

showing that defendants Kitt and Johnson were made aware of these occurrences and failed to take action or properly supervise defendant Grasso.  Thus, Rogers alleges no facts demonstrating the personal involvement of either Kitt or Johnson.  Further, as noted above, any change to the recreation practices would be made at higher administrative levels.  Thus, defendants Kitt and Johnson would be unable to provide the requested injunctive relief.  The claims against defendants Kitt and Johnson also are dismissed.

C.       Deliberate Indifference to Safety

To state a claim for deliberate indifference to safety, Rogers must show that the alleged conduct is sufficiently serious and that the defendants acted with a sufficiently culpable state of mind, that is, that they acted maliciously and sadistically to cause harm.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  The defendants must have been aware that Rogers faced an excessive risk to his health and safety and ignored that risk.  See id. at 837.  To determine whether Rogers faced an excessive risk of serious harm, the courts "look at the facts and circumstances of which the official was aware at the time he acted or failed to act."  Hartry v. County of Suffolk, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

Rogers alleges that defendants Salius, Doran, Guadarrama, Shepard, and Weir were deliberately indifferent to his safety, see Compl. ¶ 43: Salius, Doran, Guadarrama, and Shepard were aware of the planned assault before it occurred but took no action to prevent it, see Compl. ¶ 23, and Weir was aware that Rogers had concerns for his safety but declined to put Rogers in protective custody, see Compl. ¶ 20.

8

The court concludes that these facts plausibly state a cause of action for deliberate indifference.

     D.            <u>Failure to Protect</u>

Prison officials have a duty to make reasonable efforts to ensure inmate safety. This duty includes protecting inmates from harm at the hands of other inmates. <u>See</u> <u>Farmer</u>, 511 U.S. at 832; <u>Fischl v. Armitage</u>, 128 F.3d 50, 55 (2d Cir. 1997). To establish a constitutional violation, an inmate must show that the conditions of his incarceration posed a substantial risk of serious harm and that prison officials were deliberately indifferent to his safety. <u>See</u> <u>Farmer</u>, 511 U.S. at 834. Deliberate indifference exists where prison officials know of and disregard an excessive risk to inmate safety. <u>See</u> <u>id.</u> at 837; <u>Bridgewater v. Taylor</u>, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference). However, a negligent failure to protect prisoners from harm is not cognizable under section 1983. <u>See</u> <u>Davidson v. Cannon</u>, 474 U.S. 344, 347–48 (1986).

Rogers alleges that defendants Salius, Doran, Shepard, Guadarrama, Weir, Grasso and Does 1–3 failed to protect him from assault. <u>See</u> Compl. ¶ 44. He alleges that defendant Grasso was aware of the assault and defendants Doe 1–3 were present. <u>See</u> <u>id.</u> ¶¶ 25, 28. He further alleges that defendant Shepard found the note ordering the assault and shared that information with defendants Salius, Doran and Guadarrama. <u>See</u> <u>id.</u> ¶ 23. Rogers also alleges that he repeatedly requested protective custody placement from defendant Weir. <u>See</u> <u>id.</u> ¶¶ 20–21. Rogers alleges that none of these

9

defendants took any action to protect him from the assault.  These allegations are sufficient to state a plausible claim against Salius, Doran, Shepard, Guadarrama, Weir, and Grasso for failure to protect Rogers from harm.  These allegations are insufficient to state a claim against Does 1–3, however, because Rogers does not allege that Does 1–3 knew of and disregarded a risk to Rogers.  The claims against Does 1–3 are therefore dismissed.

      E.            <u>Deliberate Indifference to Serious Medical Needs</u>

To state a claim for deliberate indifference to a serious medical need, the plaintiff must show both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind.  <u>See</u> <u>Smith v. Carpenter</u>, 316 F.3d 178, 184 (2d Cir. 2003) (citing <u>Estelle v. Gamble</u>, 492 U.S. 97, 105 (1976)).  There are both objective and subjective components to the deliberate indifference standard.  <u>See</u> <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994).  Objectively, the alleged deprivation must be "sufficiently serious."  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  The condition must be "one that may produce death, degeneration, or extreme pain."  <u>See</u> <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted).  Subjectively, the defendants must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions.  <u>See</u> <u>Salahuddin v. Goord</u>, 467 F.3d 263, 280–81 (2d Cir. 2006).  Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983.  <u>See</u> <u>id.</u> at 280.  Nor does a difference of opinion regarding what constitutes an appropriate response and treatment

constitute deliberate indifference.  See Ventura v. Sinha, 379 F. App'x 1, 2–3 (2d Cir. 2010); Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

Rogers alleges that defendants LaFrance and Dr. Naqvi discounted his complaints of neck pain and numbness and that no treatment was provided for a fractured vertebra, even after it was diagnosed at the hospital.  See Compl. ¶¶ 33–38. These allegations are sufficient to state a plausible claim for deliberate indifference to serious medical needs.

### ORDERS

In accordance with the foregoing analysis, the court enters the following Orders:

(1)    All claims against defendants Kitt, Johnson, Maioruna, and Does 1–3 are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  Rogers can file an amended complaint to reassert the claims against Kitt, Johnson, and Maioruna if he can allege facts demonstrating how each defendant was involved in a failure to protect and deliberate indifference to safety.  Rogers can file an amended complaint to reassert the claim against Does 1–3 if he can allege facts demonstrating how they were involved in a failure to protect.

All claims for damages against the remaining defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).  The case will thus proceed on the counts of failure to protect, deliberate indifference to safety and deliberate indifference to serious medical needs against the remaining defendants, Salius, Grasso, LaFrance, Shepard, Doran, Dr. Naqvi, Weir and Guadarrama.

(2)      **The Clerk shall** confirm the current work addresses of defendants Salius, Grasso, LaFrance, Shepard, Doran, Dr. Naqvi, Weir and Guadarrama with the Department of Correction Officer of Legal Affairs and mail a waiver of service of process request packet to each defendant at the confirmed address within **twenty-one (21) days** from the date of this Order.  The Clerk shall report to the court on the status of the waiver requests on the thirty-fifth (35) day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on that defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)      **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal is directed to effect service of the Complaint on defendants Salius, Grasso, LaFrance, Doran, Shepard, Dr. Naqvi, Weir and Guadarrama in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(4)      The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the Complaint, either an answer or motion to dismiss, within **120 days** from the date of this Order.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order.  Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  The plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of

13

address.  The plaintiff should also notify the defendant or the attorney for the defendant

of his new address.

      **SO ORDERED** this 17th day of August 2016 at New Haven, Connecticut.


          /s/    Janet C. Hall_____
          Janet C. Hall
          United States District Judge